## BLITCH v. THE STATE.

1. Where a subpœna duces tecum, directed to one as agent of a named railway and as agent of a named receiver of the railway, requiring the production of certain documents, freight-bills and receipts, showing shipments of intoxicating liquors to certain named persons, to be used as evidence before the grand jury against them, was issued and served upon the agent, and where upon the advice of counsel he refused to obey the subpœna, and where the court ordered the production of the evidence called for therein, it being stipulated in the order that the agent "was not required to surrender possession of the papers," it was competent for the court to require the summary production of the evidence called for by the subpœna, under the provisions of § 5844 of the Code, and to punish as for contempt the witness for a failure to produce the evidence.

2. The fact that the person directed to produce the evidence was the agent of the receiver for the railway did not exempt him from the enforcement of the order for the production of the freight-bills and receipts in his possession, where they were material evidence in the investigation of criminal charges against the accused named in certain cases pending before the grand jury.

3. The judge properly overruled the demurrers, and was authorized, under the pleadings and facts, to hold that the person to whom the subpœna was directed was in contempt of court.

SEPTEMBER 23, 1916.

Rule for contempt.　Before Judge Highsmith.　Glynn superior court.　September 14, 1915.

On July 6, 1915, the superior court of Glynn county being in session, and the grand and traverse juries being duly impaneled for the transaction of the business of the court, the clerk of the court, at the request of the solicitor-general of the circuit, issued a subpœna duces tecum, directed "To J. C. Blitch, agent Atlanta, Birmingham & Atlantic Railway Co., Brunswick, Ga., and agent of E. T. Lamb, receiver thereof." By the terms of this subpœna Blitch was required to be at the superior court in session on the 26th day of July, 1915, and bring with him certain documentary evidence described as being "any and all records, documents, freight-bills and receipts, showing shipments of intoxicating liquors and whisky to and delivery of same to J. M. Simons, L. D. Wilkes, C. A. Bennett, Dock Ponder, George Ponder, E. R. Belcher, Eureka Club, Windsor Club, Mamie Ponder, D. P. Bennett, Max Marks, Tom J. Abbott, and Will Phoenix, Brunswick, Ga., between January 1, 1915, and July 23, 1915, to be used as evidence by the State in a certain case pending in said court before the grand jury between the State of Georgia and the parties named above." This subpœna was served on Blitch on July 26, 1915. Upon the following day an order was passed by the court, reciting that Blitch had failed to obey said subpœna, and directing his arrest and appearance before the court to answer, it being stated in open court by the foreman of the grand jury, in the presence of Blitch, that he, upon advice of counsel, refused to obey the subpœna. Blitch appeared and filed his demurrer and answer, and the demurrer was overruled. "Upon the hearing no evidence was taken, but the same was determined by the court upon the respective pleadings therein and the statement, in the presence of and acquiesced in by said Blitch, that upon advice of counsel said Blitch refused to respond to the said subpœna duces tecum; a prior order having been passed and served upon said Blitch, adjudging that the ends of justice required the summary production of said documents, and after passage and service of this order said Blitch stated that the compliance therewith was refused upon advice of

counsel." The court adjudged that Blitch was in contempt by reason of his failure to produce the evidence called for in obedience to the order, and directed that he be committed to jail unless he should produce the required evidence before the grand jury. In the order that the witness comply with the subpœna by producing the evidence called for, it was stipulated that "he is not required to surrender his possession of said papers." The respondent excepted to the overruling of his demurrer, and to the order punishing him for contempt.

*Bolling Whitfield,* for plaintiff in error.

*J. H. Thomas, solicitor-general,* contra.

BECK, J. (After stating the foregoing facts.) The demurrer attacks the subpœna because it was not served within ten days prior to the return day thereof; because it was directed to the respondent as the agent of the receiver, and not to the receiver; because it was not issued by the authority of the judge of the court; because it required the respondent to appear and produce the specified evidence before the grand jury, and not in a case pending for trial before the court; because the respondent could not be required to disclose the evidence called for in the subpœna, as it was business of the patrons of the receiver, or to furnish information to the grand jury as to persons who may have received intoxicating liquors; and because to comply with said subpœna requires the production in court of the writings therein called for, and is an interference with and withdrawal of the same from the possession and control of the receiver without leave of the court of his appointment. We are of the opinion that this demurrer was properly overruled. Section 5844 of the Civil Code provides for the issuing of a subpœna duces tecum under the circumstances attending the issuance of that involved in the present case. The act of 1892, among other changes made in the section just referred to (which was § 3514 in the Code of 1882), added the provision contained in the last sentence of § 5844 as it now stands in the present code, which provision is that "in all cases the judge may require the summary production of any book or document by subpœna duces tecum, where the witness is able to produce it and where the ends of justice require such summary production." With the grand jury in session, with the cases before it, with nothing to prevent the witness from producing the papers called

for, except the reasons shown in the demurrer, we think the ends of justice required the summary production of the evidence. It will be observed that in the order requiring the production of the papers the judge provided that they should not pass from the possession of the witness, the agent of the receiver of the railroad. Loss or destruction of the papers was thus safeguarded against. The court had as much authority to compel the production of evidence in a proper case made before the grand jury as to compel the production of the evidence in the trial of a criminal case before the court. *In re Lester,* 77 *Ga.* 143. If a criminal case had been on trial before the court, and it developed that such documents as bills of lading, receipts, etc., were material evidence to the State, we apprehend that the court could not have suspended the trial of the case to make application to some other court for an order allowing the production of the evidence in court. Where it became necessary, in a town or city in which was located a railroad office in charge of an agent of a receiver, to procure papers like those in question here, to be used by the State in the progress of the trial then pending before the court, it would practically work a mistrial to stop the case to serve a subpœna duces tecum upon a receiver who might live in a distant city, or to apply to another court for an order requiring him to produce documents like those the production of which was required in this case; and a mistrial for any such purpose, without the consent of the defendant, would work an acquittal,—an acquittal brought about merely because the agent of the receiver, who was at hand and who had in his possession the written evidence required, could not be summarily ordered to bring the papers in and exhibit the same to the jury. The papers required of this receiver are not in the same class as court papers, but are merely documentary evidence of the shipment and the receipt of goods mentioned in the subpœna. They are papers used in an ordinary daily business transaction between a railroad or its receiver and its customers, and such papers have no more sacredness than the receipts and bills receivable and bills payable and invoices in the office or place of business of a merchant.

It is set forth in the answer filed in the case that the receiver was appointed by a Federal court. Whether that would make any difference or not in the ruling need not be considered, as this

statement is contained merely in an unsworn answer, and no evidence is offered to support it.

*Judgment affirmed. All the Justices concur, except Atkinson, J., disqualified, and Gilbert, J., not presiding.*